# UNITED STATES DISTRICT COURT
## For the
## EASTERN DISTRICT OF TEXAS/SHERMAN DIVISION

| | |
|---|---|
| KATHLEEN D, LIEBERMAN. | ) |
| MARK J LIEBERMAN. | ) |
| | ) |
| Plaintiff, | ) |
| | (.   Case No: 4:23-cv-00887 |
| Vs. | (   Judge Sean D. Jordan |
| | ) |
| JUSTIN PAUL | ) |
| WENDY WALKER | ) |
| Defendants. | ) |

## MOTION TO INVALIDATE GARDIANSHIP, MOTION FOR SOLUTION, MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSE

**Plaintiff's Kathleen Lieberman and Mark Lieberman** move the court to invalidate the Guardianship granted by the District Court of Tulsa County, Oklahoma. Justin Michael Paul and Wendy Walker were granted Guardianship of Taylynn Alexis Jester a Chickasaw Indian minor child on 12-07-2022 in Tulsa County District Court. The FEDERAL RULES OF CIVIL PROCEEDURE rule 18 & rule 21 allows for joiner of this cause. The Natural father Trevor Jester and his Indian Family have a common interest with Mark and Kathleen Lieberman in the outcome of this cause and join the Plaintiffs in this case. The Family has been unable to see Taylynn Alex Jester since this guardianship began, including the father Trevor Jester. Erica Spabury , the aunt of the minor child and sister to the deceased mother Alexandra Jester wish to be adjoin this cause(*see Exhibit"1-J")*. In arriving at clear path of relief in this case, the plaintiffs found that defendants provided misleading and inaccurate information to authorities and to the court in obtaining their Guardianship. The defendants claim of exclusive and continued jurisdiction is flawed. The District Court of Tulsa County has violated federal law as set out in the ICWA , violations of it own Oklahoma state law rule 8.2, and Texas law in Texas family Code 153.432 and section 152 in the process. The Plaintiffs also move the Court for an award of attorney fees, costs and expenses required for this case and its investigate due to the defendants "unclean hand" in providing inaccurate information to the court.

**The Jurisdiction of the United States Eastern District of Texas Court in this case has Jurisdiction and is the correct Court. The actions of the District Court of Tulsa and the Defendants in which we seek relief involves:**

1) a violation of Federal Law pertaining to ICWA and UCCJEA . This action involves an Indian Child Taylynn Alex Jester.
2) The case involves State Jurisdiction issues with damages in excess of $78,000 and
3) Constitutional issues in violation of US Constitution 14th Amendment on Due Process.

COMES NOW the Petitioner, Mark and Kathleen Lieberman along with Trever Jester and Family, Stanton and Erika Sprabary the undersigned, and moves the Court to Invalidate the child custody proceedings involving an Indian child as defined by the *Indian Child Welfare Act of 1978, 25 U.S.C. § 1903* for the guardianships PG-2022-640 pursuant to *§ 1914. Petition to court of competent jurisdiction to invalidate action upon showing of certain violations*. The United States Eastern District of Texas Court is a Court of competent jurisdiction. The defendant's actions in securing possession of the minor Indian child, misrepresentations, circumvention and omitting critical information on UCCJEA affidavits is a clear violation of Federal law. The Guardianship proceeding in the District Court of Tulsa County, Oklahoma for T.A.J violated numerous ICWA Federal laws by the courts actions.

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of *sections 1911, 1912, and 1913 of this title. (Pub. L. 95-608, title I, 104, Nov. 8, 1978, 92 Stat. 3072*

## Response to Defendants Arguments

In the plaintiffs current motions before the court there is a clear and definite statement to support our past and present claims at it relates to Rule 12 of the FEDERAL RULES OF CIVIL PROCEEDURE. There is a clear path of relief.

The ICWA does provide for emergency placement of an Indian minor child, however the procedure for the emergency placement and subsequent proceeding were not followed according to ICWA Federal Law.

The District Court of Tulsa County, Oklahoma based its Emergency Jurisdiction on flawed information from Defendants. In continuing its proceeding with full knowledge of the Chickasaw Emergency guardianship and ICWA laws governing an Indian minor child the court violated ICWA Federal law.

There was no notification the Chickasaw Tribe or the nature father concerning The District Court of Tulsa County Special Guardianship proceeding as required by Federal Law .

There are certain right granted to the Grandparents of a minor child in **Texas Family Code Section 153.432(***see Exhibit"3G"***) gives a biological or adoptive grandparent the ability to**

**request possession or access to a grandchild to grandparents and in Oklahoma Statutes title 43-109.4(***see Exhibit"4G"*)

# History of Events

### 8/10/2022
### DEATH OF TAYLYNNS MOTHER

(*see Exhibit" 5T-3"*) Chain of events surrounding death and the days following until 8/17/2022

Justin Paul told police that he and his wife cared for the minor child and he had no way of getting in touch with Kathleen Lieberman or any other next of kin for Alexandra and the minor Indian child would have no place to go. The minor Indian child TAJ had been in the apartment with her dead mother badly decomposing for two day in 100 degree heat and no electricity. The police, any other officer but mainly Justin Paul should have taken this little girl to the hospital for evaluation before subjecting the child to the long trip to Tulsa and he waited 7-8 hours before he notified Erika Spaybary of Alexandra death and gave Erika the responsibility of telling Mark & Kathleen Lieberman of her death.

### 8/17/2022 - PG-2022-640

Wendy Walker files documents for Special guardianship with the Tulsa County District Court, Oklahoma     ( *see Exhibit "6a"*) Wendy apply for the Guardianship without Justin Paul, I would venture to assume because of his criminal history including aggravated crimes and Felony DWI's( see exhibit "7j") On line 2 of the affidavit UCCJEA Wendy states under oath that the minor child TAJ has lived at her home at 6808 E. 26th Ct. Tulsa, Oklahoma for the last five years. Then in number 3 of this affidavit Wendy states there are only two people TAJ has lived with in the last 5 years (see Exhibit "8E"). That is Wendy Walker at her Tulsa address above and the deceased mother at 11036 CR 3557 Ada,Ok. When in fact case#PG-2020(see Exhibit "8E") shows On line 4 of the UCCJEA affidavit the answer is lists Case #PG-2020-557 in January 2020 this was an The case indicates this is the second time Wendy Walker filed for Emergency Guardianship on August 25th,2020
And was dismissed on 11-24-2020 the date Wendy Walker Claimed to have filed a for a general guardianship. Wendy Walker filed her first fraudulent affidavit on a UCCJEA form on 1-15-2022 in Tulsa County District Court (*see Exhibit "8E"*) #PG-2020-38 see questions and answers. At that time she had only met TAJ a few months earlier for the first time on 08-07-2019. The first case **#PG-2020-38** was dismiss because of a finding by the court that no emergency existed and failure to comply with ICWA notice or obtain needed background check on her boyfriend Justin Paul a convicted felon with aggravated charges. On that very day the court ordered Wendy Walker to surrender TAJ to her natural mother, Wendy Walker walked upstairs and filed another Emergency Guardianship petition **# PG-2020-557(***see Exhibit"7E"***)** with a different Judge and failed to disclose to the court that the first Emergency Guardianship that was

discharged with no emergency existing. Wendy left Justin Paul off this application and stated that she had cared for TAJ the minor Indian child since birth when in reality she had met TAJ less than a year earlier( **see Exhibit "7E").** The second Emergency guardianship was discharged on November 24,2020 due to No Emergency existed and failure to comply with court required disclosures. These facts are evidenced *by Exhibit"13"* counsel request re for payment of legal fees..

Wendy Walkers MO is evidenced by this most resent filing for Guardianship *" Exhibit "6A" Exhibit"12"inconsistantcy,& Exhibit "13" relevant facts*

## 8/30/2022 - PG-2022-40
## STANTON AND ERIKA SPRABARY FILE EMERGENCY PETITION IN TRIBAL COURT

After multiple unsuccessful attempts to discuss with Justin Paul the best solution for their niece, it became evident he was not being truthful and our guardianship was sought. Out of respect for her sister and the Chickasaw Tribe and the advice of counsel, they filed the petition in the Tribal Court where they were domiciled.  A hearing was scheduled September 13, 2022.

## 9/13/2022 - PG-2022-40
## TRIBAL COURT EMERGENCY GUARDIANSHIP APPOINTED to STANTON AND ERIKA
## PICK UP ORDER ISSUED

**Results of hearing**
The maternal and paternal families of both parents were in attendance to support the guardianship.  After presenting evidence straight from Alexandra's own file labeled (in case he tries to take her again),   **It provided clear evidence of abuse by Justin Paul to the child's mother.  Consistent domestic violence that child was subjected to while in their home in 2019. Evidence and testimony of Alexandra's concern of sexual abuse after she got TAJ back from Wendy Walker and Justin Paul.**  Stanton and Erika were appointed emergency guardianship given pick up orders.  They were advised to pick her up from school with the assistance of a police officer.

After the hearing at the Tribal Court in Ada, Oklahoma, our families drove to Tulsa in hopes of getting there before school let out.  Unfortunately, we did not arrive in time and had to get a hotel.  We had not prepared for an overnight stay so had to buy toiletries and wash the clothes we had on to wear the next day.

## 9/14/2022 - PG-2022-40
## PICK UP ORDER FROM TRIBAL COURT EXECUTION ATTEMPT.

Upon attempting to execute the pick-up order, we were notified of the pending guardianship proceeding in the Tulsa District Court the next day.

**Morning of 9/14, we called the appropriate Office and he met us at the School shortly thereafter.  After reading the pick-up order, he stated he needed to call his superior for assistance to execute it properly.  Knowing another Officer would be arriving, Erika asked the Officer if they could move their vehicles to the other parking lot since they were currently in front of the play ground.  She was concerned it might alarm the kids on the playground.  The Officer said it was not necessary.  Then utter chaos, turned out to be an all day affair, one Officer turned into 5 and not one seemed to know what to do.  They call Lighthorse and the Chief comes out, calls his superior who stated the Tribal Court Order should be carried out.  However, when he went inside to speak with the School Administration office, they refused to release her.  The Chief came back outside, informed us of the hearing that was to occur the very next day and gave us a copy of the document they gave him.  This was the first we had heard of it.**

**This meant we had to find an attorney that could help us with only a few hours' notice and stay another night.  This put us in a horrible spot, we had to make arrangements for work and our kids, Stanton had not had his blood pressure medication in two day and no clothes.  Being the man Stanton is, he spent all night driving to Denton and back to get the items we needed.  He arrived just an hour before court the next morning.  Only to be denied the opportunity to contest the Guardianship to the Judge.  We were not permitted to go into the Courtroom and had to wait in the hallway while the attorneys went in to speak to the Judge, off record.**

## 9/15/2022 HEARING - PG-2022-640
## NO AUTHORITY TO DETERMINE GUARDIANSHIP MATTERS
## DID NOT ENFORCE TRIBAL COURTS EMERGENCY ORDERS
## IGNORED DOMESTIC VIOLENCE, ABUSE, DOG ATTACK

**No Service to Father, Chickasaw Tribe did not receive notice until 2 days before the proceeding**, thus, the Tulsa District Court had no authority to determine guardianship matters pursuant to 30-1-113 B, thus, the 9/15/22 proceeding should be invalidated pursuant to 1914 ICWA.

**§30-1-113 B.** *After* the service of notice in a proceeding seeking the appointment of a guardian or other order, in subsequent proceedings pertaining to the guardianship of a ward and until termination of the proceeding, the court in which the petition is filed has exclusive jurisdiction to determine: 1. The need for a guardian or other order; and 2. How the estate of the ward shall be managed, expended, or distributed to or for the use of the ward or the dependents of the ward.

**No diligent effort,** or effort at all was made to give notice to the Father or Family.  Notice was sent to the Marshal County where he had been temporarily incarcerated two days after his release.  A phone call to the family or County jail to ensure he was still there would have been a minimal effort but this was not done.  In addition, the notice was returned to sender as evidenced on the usps tracking as early as 8/29/2022.  Petitioner ultimately was informed of his whereabouts by Erika Sprabary.

**Tribal Court EMERGENCY Guardianship Ignored**

**Tulsa District Court was notified of the Guardianship appointed to Stanton and Erika Sprabary in the Court with Exclusive Jurisdiction, the Chickasaw Court**.  Upon this finding and the fact the Tulsa District had no jurisdiction to determine guardianship matters until AFTER the Father had been served, the Tulsa District Court should have declined their perceived jurisdiction and dissolved the Special Guardianship and returned the child to the proper Guardian immediately pursuant to;

   **Title 30, E.** *The court shall grant the special guardian only those powers necessary to act with respect to the particular emergency, as determined by the court. The special guardian shall be granted only powers to accomplish acts that are both supported by the proposed emergency plan of care and found necessary by the court.*

   **ICWA §1922.** *Emergency removal or placement of child; termination; appropriate action. Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.*

   **25 U.S.C. § 1911, (b)** *In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary,* **shall** *transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent,* **upon the petition of either parent or the Indian custodian** *or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.*

*BIA Guidelines defines Indian custodian*, "any person who has legal custody of an Indian child under tribal law or custom or under State law, whichever is more favorable to the rights of the parent, or to whom temporary physical care, custody, and control has been transferred by the parent of such child."

***§1920**. Where any petitioner in an Indian child custody proceeding before a State court has improperly removed the child from custody of the parent or Indian custodian or has improperly retained custody after a visit or other temporary relinquishment of custody, the court shall decline jurisdiction over such petition and shall forthwith return the child to his parent or Indian custodian unless returning the child to his parent or custodian would subject the child to a substantial and immediate danger or threat of such danger.*

## EMERGENCY IGNORED
**Despite evidence of extensive abuse to the mother of child, domestic violence, possible sexual abuse, continued drinking after 4 DWI's and a severe injury that occurred in the Defendants home due to the drinking just 3 weeks before their filing of a DHS claim on 1/13/2020, making false allegations against childs mother.**

**Pursuant to** UCCJEA, "Emergency (governs situations such as abandonment or abuse that require immediate protective action"

 "Tribal Court Orders and Proceedings The UCCJEA does not apply to custody proceedings concerning American Indian children to the extent that such proceedings are governed by the Indian Child Welfare Act, 25 U.S.C. § 1901 et seq. 43 Child custody proceedings in State courts that involve tribal-State jurisdictional disputes are subject to the UCCJEA only if the State has enacted optional sections 104(b) and (c) of the UCCJEA, which require State courts to treat tribes as if they were States and tribal court custody proceedings as if they were court proceedings of sister States and to enforce tribal court custody orders."

### PG-2022-640 - CONTINUANCE TO 12/7/2022
Ultimately, the court claimed they had jurisdiction according to the first two invalid cases (see exhibit), did not adhere to icwa laws or even its own, then did a continuance for three months later which is another icwa violation.  Defendents attorney filed a motion to dismiss our case in the Tribal court.


**9/15/2022 PG-2022-40 - TRIBAL COURT CONTINUED THE SPRABARYS GUARDIANSHIP**

**9/20/2022 PG-2022-640 - MOTION TO DISMISS FILED PRO-SE (Exhibit ?)**
This was totally ignored.

**12/7/2022 Hearing and Granting of Guardianship**

Father attended the 12/7/2022 hearing, WITHOUT representation because he did not believe he needed it.  He was there to simply;

      1.      Request the Tribal Court appointment be honored and the special guardianship dismissed, per his                       Petition (exhibit).
      2.      Contest Wendy walker and Justin Pauls guardianship
      3.      To attest to the fact this was the mothers wishes as well.
      3.      Voice his concern about the safety of his daughter in the home of Justin Paul.
      4.      As the only surviving parent, exercise his constitutional right to direct the upbringing of his daughter and consent to Stanton and Erika Sprabarys guardianship that was already appointed by the Tribal Court.

**ICWA 1911 (b)** *Transfer of proceedings; declination by tribal court*
*In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.*

Instead, The Judge decided he wanted to hear the case himself and denied the Fathers Request before he heard any testimony to precure a "good cause" not to transfer.  The Judge cited, "he didn't want anyone thinking he couldn't work through this himself", ICWA, UCCJEA and a brief conversation with the Tribal Court Judge for his assumption that his court was the best court to take care of the guardianship that day.

ICWA as reason for good cause?   Is everything contrary, and was created for the sole cause of wanting child custody proceedings regarding an Indian child in the Tribal Court, not the State.  As stated by congress and Indian Tribes across the nation.

The unverified UCCJEA as reason for good cause?  The UCCJEA instrument used by the petitioners intentionally omitted all family information, Texas case, and that the child was domiciled on the Chickasaw reservation then falsely claimed the child had lived with her the last five years.

Additionally, the Judge knew;
 the Father did not have representation
that the Guardians appointed by the Tribal court had not filed a cross petition and would not be heard and the only guardians that would be heard were the ones the child's father, mother and their families opposed.

There was already a Guardian Ad-Litem already appointed in the Tribal Court then neglected to appoint one in his court.

The "expert witness" that had never spoke with Taylynns Father or family and allowed her to give testimony via teleconference with less than an hours notice,citing rule 34 as justification even though she was only a few miles away.  In a subsequent hearing on 11/2/2023, the Judge cited the same rule as reason to not allow the Father to join via teleconference and insisted the Father come in person or give a 30 day notice of his need to teleconference.. Besides being biased, this is against ICWA and UCCJEA standards. It should also be noted the Judge was the one that suggested him joining via teleconference in the previous hearing.
  then did another 3 month continuance knowing that entire family and a witness traveled 255 miles (one way), paid for childcare, hotels, attorneys to be at the hearing
 the hardship it would cause on the Father and her family, including her Indian family due to the 255 mile barrier it would put between him and his daughter, making active effort near impossible.
He can not legally leave the state of Texas.
 "Congress enacted ICWA in 1978 to address the Federal, State, and private agency policies and practices that resulted in the ''wholesale separation of Indian children from their families.''2 Congress found ''that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions . . . .''3 Although the crisis flowed from multiple causes, Congress found that non-Tribal public and private agencies had played a significant role, and that State agencies and courts had often failed to recognize the essential Tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.4 To address this failure, ICWA establishes minimum Federal standards for the removal of Indian children from their families and the placement of these children in foster or adoptive homes, and confirms Tribal jurisdiction over child-custody proceedings involving Indian children."

"ICWA gives tribal governments a strong voice concerning child custody proceedings that involve Native children, by allocating tribes exclusive jurisdiction over the case when the child resides on, or is domiciled on, the reservation, or when the child is a ward of the tribe; and concurrent, but presumptive, jurisdiction over non-reservation Native Americans' foster care placement proceedings."


 The court ignored the Fathers nomination which was the Sprabarys. The court heard no testimony on our side.  Then slapped standards on the Father even though there was no finding of him being unfit.
.
**REASONS FOR NOT GOOD CAUSE**

Against ICWA law.
There was no finding that Trever Jester was unfit,

Denied the wishes of both parents
the
e.  Did not ask for custody at this time, only to exercise his constitutional right as the only surviving parent to direct the upbringing of his daughter.
    f.  The Father nominated Stanton and Erika Sprabary but was ignored.
g.  Stated he had never met Wendy Walker or Justin Paul.
h.  Stated he did not want his daughter living 250 miles away
i.  Stated he wanted his daughter to reside with Stanton and Erika where she previously resided and where he would not be hindered from visitation with her.
j.  knowing it would place a 255 mile barrier between not only the father, but her entire Indian family, her maternal sides family, making active efforts next to impossible.

The Court did order visitation with the father allowable every three weeks at the Sprabarys home with their supervision.

Defendants went against court orders and decided they wanted Trever's visitation to be alone, in Tulsa, under their supervision.  ICWA violation direct active efforts.
Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. RULE 34

**Non-Compliance with ICWA**
Rules for District Courts of Oklahoma.
Rule 8.2. Decrees, Orders or Judgments Affecting Indian Children - Compliance with Certain Laws.
All decrees of adoption, divorce or separate maintenance where custody of a minor Indian child or children is given to a third party, all orders of adjudication in juvenile proceedings, termination of parental rights and all final orders in Habeas Corpus and guardianship of the person proceedings resulting in the adjudication of status, custody or wardship of minor children, shall contain a finding of compliance with 25 U.S.C.A. 1901 et seq. (Indian Child Welfare Act of 1978) and 43 § 551.101 et seq. (Uniform Child Custody Jurisdiction and Enforcement Act),
The trial court shall in all such proceedings make findings of fact as to the child's correct, full legal name and date of birth and all instruments memorializing such decrees, orders and judgments shall recite the findings required hereby. *See* 25 U.S.C.A. 1901 et seq. (Indian Child Welfare Act of 1978).

12/13/2022 guardians intentionally hindered visitation with father by not abiding by the Court orders.  They decided they were going to supervise the visitations with Trever and his daughter in Oklahoma rather than in Texas where he lived.

No one in Taylynns Chickasaw family has seen Taylynn.

No one in Taylynns mothers family has seen Taylynn.

They will not allow either family to speak to her, see pictures of her, know anything about her.

**11/2/2023 HEARING**

Complete and total biased:

UCCJEA
Interstate Cooperation ⌉ Develop a protocol (using telephonic, video, or other forms of communication) to enable out-of-state litigants to participate in court hearings without returning to dangerous jurisdictions. ⌉
⌉ Provide information to out-of-state litigants upon request. ○ Respond to requests for information about court filings and issued orders from litigants located outside the state, unless expressly prohibited by law or court rule. ○ Inform litigants who cannot appear in person for safety, financial, or other reasons about how they may request permission to appear remotely by telephone, video, or other means.

Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power.

RULE 34

## Summary of facts

**The rules are in place for a reason, and the UCCJEA designed their affidavit questionnaire in place to vet possible candidate for guardianship of our most prized asset as a country our children. If person tells the whole truth the UCCJEA affidavit is a useful tool and the person making can honestly be evaluate for the position of guardianship. If a person is not telling the whole truth and omitting detail or exaggerating the truth or just making pure misrepresentations of the facts, the person lack integrity and should not be trusted in important matter. Wendy Walker has made sworn statement in her affidavits on not one but three separate cases that are not truthful, some maybe half truths or has omitted important**

**fact. In evaluating her statement on the first Emergency guardianship PG-2020-38(***see Exhibit "8E"***) Wendy Walker States she is the aunt to the minor Indian Child TAJ, that Oklahoma is the home state for TAJ. As a testament to how little she knows about the child, Wendy walker states the child is an Indian Child of the Choctaw Nations. The first time Wendy Walker met TAJ was on 08-07-2019 the Minor Indian Child TAJ was under the supervision of Texas until the case closed on11-12-2019 when Alexandra was granted full right back to the child. On the 15th of January 2020 when Wendy filed for emergency guardianship by sworn statement she said that the state of Oklahoma was the home state of TAJ and TAJ had been in the child had been in the state for six months. The child TAJ is also Chickasaw not Choctaw The documented truth evidenced by records in the Texas District court show that TAJ had been in the state of Oklahoma since 08-07-2019 or a little over 5 months and Texas had exercised continuous jurisdiction until 11-12-2019. Texas had jurisdiction in this case and TAJ was not the home state. This case was dismiss on 8-7-2020 due to no emergency existed and failure to notify the require parties of the case but not until almost 7 month later. (see Exhibit "12" Uccjea & Exhibit"13" Relevant facts. If Emergency guardianship PG-2020-557 see Exhibit"7E" and PG-2022-640 see Exhibit"6A" is reviewed the lies grow, Wendy become the person that cared for TAJ since birth and Justin Paul is no longer on the affidavit because of his criminal record. See Exhibit "2R"**

The number of ICWA violations of the law are so numerous as outline in motion that we don't feel any additional discussion is needed.

## Solution

Erika Sprabary and her husband were vetted by the Chickasaw Indian Court and assigned a guardianship that we believe was the rightful court of jurisdiction, the couple have no criminal record and have raised four children of their own. They also have support of the entire family and are will to accept a guardianship. The court can transfer this case to Texas with the approval of the Chickasaw Tribal court or transfer/direct this matter to the Chickasaw Tribal court.

Our prayer is that the Honorable Court invalidate the guardianship in the District Court of Tulsa County. Transfer the Jurisdiction to Texas with the Chickasaw tribal courts approval or transfer the jurisdiction to the Chickasaw Indian Court for final disposition. We pray the court awards the plaintiffs attorney fees, costs and expenses .

Respectfully Submitted,

_____
MARK LIEBERMAN
Texas Bar No. 12332520
1704 Pine Hills Lane
Corinth, Texas 76210
(817) 905-3772
Mjc358 @hotmail.com

Dated:01-06--2023