# UNITED STATES DISTRICT COURT
### For the
### EASTERN DISTRICT OF TEXAS/SHERMAN DIVISION

KATHLEEN D, LIEBERMAN.　　　　　)
MARK J LIEBERMAN.　　　　　　　)
　　　　　　　　　　　　　　　　)
Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　(　　　　Case No: 4:23-cv-00887
Vs.　　　　　　　　　　　　　　　(　　　　Judge Sean D. Jordan
　　　　　　　　　　　　　　　　)
JUSTIN PAUL　　　　　　　　　　)
WENDY WALKER　　　　　　　　　)
Defendants.　　　　　　　　　　　)

## MOTION FOR SUMMARY JUDGEMENT

## WRIT HABEAS CORPUS

## MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSE

It is with a heavy heart to inform the court of the passing of my beloved husband, Mark Joel Lieberman. He was not only my partner in life but also served as my attorney in this case of utmost importance to our family.

Before his departure, my husband expressed his fervent desire for his last response to be filed in the ongoing case regarding our granddaughter.  He implored that the court consider the profound injustice and injuries created through the egregious actions perpetrated by Justin Michael Paul and Wendy Walker prior to and upon the untimely death of our daughter and in the days immediately following.  Our daughter, Alexandra Hayden Paul was the Natural mother of TAJ, a Chickasaw Indian minor child that resided with her parents on

the Chickasaw reservation at the time of her untimely death and is the focus of these proceedings.

The plaintiffs Katheen Lieberman and Mark Lieberman began this action to simply request that the Honorable US Court of The Eastern District of Texas compel the Defendants to provide visitation with our Grand Daughter, whom resided with us as recent as 8 months before our daughter died.  The fact of the matter is the defendants should have never had the child to begin with.  Our daughter, Alexandra executed a written declaration designating her mother, sister or step-brother to be Guardians of T.A.J. in the event of her death.  She made this provision specifically due to the defendant's multiple fraudulent attempts to take her daughter while she was alive.  She purposely made mention that T.A.J.s was born and raised in Texas with the exception of the period of time that the defendants kidnapped and detained her daughter in Oklahoma while they were staying there temporarily.

Our daughter, Alexandra, was a devoted mother who had unwavering love for her children until her passing. It is essential to note that the defendants only entered her life three years before her death (August 7, 2019 - August 10, 2022).  Even more crucial is that out of those three years, Alexandra was estranged from them for over 25 months of that time.  Oddly enough, this equates to two time periods of 23 weeks that Alexandra attempted to have a loving relationship with them.  However, throughout the brief period of their involvement, our daughter endured severe verbal and emotional abuse at the hands of the defendants as evidenced in these messages between Justin Paul and our daughter (see exhibit - Justin Paul fb decipher) for full conversations);

2

**10/2/2019 (only one month after their relationship began)**

Justin Paul:     "You'll have nothing to do with your daughter"

                 "Fuc*in worthless"

                                                   Alex:   "Keep on"

Justin Paul:     "WORTHLESS!"

                                                   Alex:   "Cool"

Justin Paul:     "Get the fu*k out of my house"

                                                   Alex:   "Ok"

Justin Paul:     "You aint a mom"

                 "Never will be"

                                                   Alex:   "Ok"

Justin Paul:     "Your worthless"

Justin Paul:    "You aren't to see T.A.J. anymore.  How about that bitch"

                "Im on my way home.  You better not there when I get there"

                        Alex:   "Im not"

Justin Paul:    "I really dont know how you've made it so far in life you should've just fuc*king

                OD and Stayed dead"

                        Alex:   "Ill never forget the words you said"

Justin Paul:    "You're your're fuckin* dead to me Alex"

                "The fu*k out of **our** life"

                        Alex:   "I'll never forget"

Justin Paul:    "Worthless worthless worthless worthless worthless worthless"

                        Alex:   "I hate you"

Justin Paul:    "You are a fuc*ing worthless piece of shi*t"

                        Alex:   "Got it"

4

Justin Paul:    "Im just joking.  I ain't mad at ya.  It's all good"

"Sorry for yelling at u"

Alex:    "I'm not coming back to your house.  I called the shelter on the west side and they'll have a bed for me Monday"

"In 30 days I'll have my own place so no worries"

Justin Paul:    "Hallelujah"

"I'm so happy for you you're doing great keep up the great work"

Alex:    "As far as T.A.J. that's my baby and I'll fight.  Have been since she's been born. Lets get Cps out please don't rub your mouth"

"If you saw my face right now you'd know"

"Not your wife"

"Not gonna kiss and make up"

Justin Paul:     "Have fun at the shelter that's probably where you should be anyway probably where you belong"

### 10/4/2019

Justin Paul:     "And by the way just Incase you didn't know, CPS cant take T.A.J. out of our home.  That ship said.  Our home is tribal approved and you can call them up and tell them whatever the hell you want like you did to Erica, T.A.J. is done jumping from home to home because of your inadequate behavior and irresponsible actions.  Like seriously.  Done."

Justin Paul:     "What shelter to I take your sh*t to."

Alex:   "Can't take stuff to the shelter dumb ass.  Im coming back, right back down here.  Saving my fuckiong shit down here.  Thats why I didnt give up everything right before I came up there."
"You ARE not my fuck*ing brother"

Justin Paul:     "They know T.A.J will be with us no matter what you do etc.  I told them you got two jobs and are trying hard."
"They asked very specific questions"

Justin Paul:     ".....Seems as though they are looking for any little reason to hang you out to dry"

Alex:   "Oh yeah cause T.A.J. and I just really deserve that"

"Do you think out of everyone that you're GOING to be the oine to keep my daughter away from me seriously."

"Yeah because I met with them CPS and my attorney yesterday I've been 100 with everybody"

Justin Paul:     "I'll take her if I want to.  You need to know that right now."

"Remember something Alex"

"Its only bc of me you are here"

"It's only bc of me"

Alex:   "Oh I know that"

Justin Paul:     "You get to see your daughter not bc of you"

"Remover Alex"

Alex:   "And you're also the only reason I'll leave"

Justin Paul:   "You have zero control"

"Remember Alex"

Alex:   "Yeah you're absolutely right"

Justin Paul:   "You have zero rights to T.A.J."

Alex:   "You're the one with the control"

Justin Paul:   "Remember Alex"

"I make one phone call"

"You ass is back in the ringer"

"Remember Alex"

Alex:    "Sit here And act like you're all high and mighty Will you even have a license to DRIVE"

Alex:    "You're right Justin I'm NOT taking  anything away from you and what you've done for me...you absolutely SOLEY made it possible you are the one that brought me and pops back together and why you're trying to destroy that now I will never have any clue"

Justin Paul:    "I'll rip your comfortably living life right out from under you and send your ass to Texas in probation in just a simple phone call"

"You seriously have zero hope"

Alex:    "One day you'll realize exactly what your words do to people"

"I you want to make my life hell and **take my daughter away from me THEN you'll have no problem burying me...And I mean literally**.

9

Alex:   "I'm literally dying inside right now"

"You have no clue Justin"

Justin Paul:   "....Nobody here has abandoned their child"

Alex:   "Oh now I'm abandoning my child?  Your sick."

Justin Paul:   "Im taking your shi*t to Popp's. Do not come here"

"Should we just file for adoption on T.A.J since you cant do right by here?"

Alex:   "Go ahead."

"Id like to see it"

Justin Paul:   "Should we just call Michele and tell her to put her in foster care:

Alex:   "Do you think you and Wendy are

better than me"  Ok"

Justin Paul:   "A crack head is better than you"

"Whenever you feel like bowing down let me no.  Until then You

can live the dream without seeing your kid.  Later skater.

"You'll probably stay down there and get high hell you're probably fuc*ing high right now but that's the kind of shit you want do.  I hope you do stay down there."

"Wouldn't be surprising"

"You'd bow down for drugs wouldn't ya"

"But not for your kid"

"Your high"

Alex:   "No I'm not.  But you'd make anyone go there with your fuc*ing mouth.  I've had worse than you.  You won't make me get high.

Justin Paul:   "Your high Alex.  It was to be expected."

Alex:   "If I was high I wouldn't talk to you at all"

Justin Paul:   "Yeah your are"

"Have a good life little sister who couldn't"

11

Alex:   "Justin I'm sorry for not doing what I said I was going to do.
There's no excuses I just need to better and will work on it from
here on out.  Please do not keep me away from my daughter"

That was just a fraction of the cruelness of Justin Paul, as if that was not bad enough, Alex and
her daughter were subjected to the continual domestic violence Justin Paul inflicted on Wendy
Walker in their presence.  Ironically, just 3 weeks after their negligence led to a horrifying
incident where their dog mauled her daughter, the defendants filed a DHS claim alleging Alex
was harming the child.  Two days after they filed the false DHS claim (omitting the dog injury,
domestic violence and emotional abuse) they physically kidnapped her daughter from her crib
while she slept in the next room then filed their first "emergency" guardianship claiming the
child lived with them.  This was only 2 months after the State of Texas, her home state with a
significant connection and exclusive continuing jurisdiction ordered her the sole permanent
conservator for T.A.J.  Furthermore, no one including the State of Texas, Father, Tribe, Mother
or our family were ever notified. One month later, on 2/11/2020, myself (Kathleen Lieberman)
and Alexandras natural Father, (Don Paul) attended the hearing.  Don Paul informed the court
that his son kidnapped the child from his home (where Alex and T.A.J. were staying).  He also
informed the court that Justin Paul was not mentally well and was a tyrant.  Being that Justin
Paul is his son, that should have held some weight.  Despite this, the court allowed the improper
removal of the Indian child from her mother and unlawfully detained our granddaughter in
Oklahoma for 9.5 months causing a massive hardship and burden on the mother and the families
of the child.   The Defendants effectively robbed both families of approximately nine months of
contact with "TAJ" at a critical time of her child development violated their rights to due process

(just as they are now).  Our daughter was faced with the ordeal of having her daughter unjustly taken from her after working so hard for nearly two years to get her back.  She was extremely discouraged but fought tirelessly against the false accusations and misrepresentations and the case was dismissed.

Alexandra was a resilient individual who overcame significant challenges, including successfully completing the Denton Drug Court program. Her dedication and commitment to turning her life around were evident, yet the defendants callously exploited her past struggles to further their own agenda in gaining custody of her daughter.  The defendants not only exploited our daughter's past struggles but also manipulated her tragic death to serve their own interests, disregarding the well-being and stability of our granddaughter in the process.  The defendants' actions were not only morally reprehensible but also deeply manipulative and calculated.

After finally getting to bring her daughter home to Texas on 10/30/2020, Alexandra took every precaution to safeguard her daughter, T.A.J. from the defendants and executed a witnessed declaration to ensure the defendants could never again take her daughter.  As previously mentioned, she had no communication with Justin Paul or Wendy Walker until the beginning of 2022 when she (with extreme precaution) extended an olive branch in compassion towards Wendy Walker, who was diagnosed with breast cancer.  However, this was short lived, 23 weeks to be exact.  Alexandra was immediately aware of her mistake by allowing the defendants back into her life and ultimately ceased contact with the defendants aprox. 5 months later, as she stated to T.A.J. paternal Grand Mother, "Wendy was after her kid again" (see exhibit - Gingers affidavit).  Alex knew there was an obvious adverse interest

at play, as she said in her words "Justin wants control and Wendy is obsessed with my daughter because she didn't get to raise her own three girls" (exhibit - Wendy obsessed fb Cooney, exhibit - She's yours now).  It's extremely important to note that during that 5 month time period, the defendants were not permitted to visit with the child without a signing a document stating the specifics of the visit and return date.  The defendants were fully aware that Alexandra was adamite that they never attempt to take her daughter again as shown in this text message less than four months before her death;

Wendy Walker - "BTW, Justin called bitching about that letter"

Alex Paul - ***"I don't think you'll ever try that shit again the T.A.J.  But you told me back then Never do that and you ended up doing it anyway.  Surely, He can understand I'm just covering my ass.  He's not going to bully me when it comes to Tay."***

Wendy Walker - "***I know sis*** I told him the stuff is shit it is fine I told you I do understand your point too totally"...


Yet, they "ended up doing it again" and Justin continues to "bully me (Alex) when it comes to Tay".  Alexandra believed the "protections" she had put in place would protect her daughter from the defendants (see exhibit - Alex protections, exhibit - Brittany Jester affidavit, exhibit - Ginger Jester affidavit, exhibit - Carries affidavit).


However, after our daughter's passing, the defendants continued their relentless pursuit of control over our granddaughter. They resorted to hiding my daughter's death for over 7 hours, deliberately avoiding contacting the next of kin.  Had they informed us, Justin Paul would not have left with our granddaughter, we would have been there to take the child back

to Texas as directed in our daughter's declaration.  The defendants immediately initiated a fraudulent emergency guardianship, the same guardianship (PG-2022-640) as cited by the defendants in their response to Grandparents rights.

Wendy Walker (the live-in girlfriend of Justin Paul), whom is of no relation to the child by blood or marriage petitioned for an emergency guardianship without notice on 8/17/2022, claiming she was the child's only family and that the child had resided with her the last five years (exhibit" " - UCCJEA 2020 and 2022) .  This will mark their third attempt to secure guardianship of our granddaughter deceitfully under false pretenses through the Tulsa District Court.  Each attempt, petitioned on a purportedly "emergency" basis to avoid detection of her family demonstrates a clear pattern of manipulating the legal process.  The instruments in which the defendants nominated themselves, each time, contained numerous fabrications and withheld crucial information about the minor's living situation, familial relationships, pertinent Texas case with jurisdiction, and defendant's background.

Furthermore, the Tulsa District Court did not have jurisdiction to appoint the guardianship as the defendants claim.  The defendants' intentional omissions and false statements have aided the Tulsa District Court to usurp jurisdiction from The State of Texas and the Chickasaw Tribe and created a distorted representation of the circumstances surrounding this case.  This has most assuredly have harmed the minor child by influencing the court's decision unfairly.  This pattern of criminal behavior cannot be overlooked and must be addressed promptly to ensure the best interests of our granddaughter.

In addition, the mother of the minor child, ALEXANDRA HAYDEN PAUL, whom was the "PERMANENT SOLE MANAGING CONSERVATOR OF T.A.J. executed a written Declaration designating the Lieberman's and her sister to be the guardians of T.A.J. in the event of her death.  The Natural Indian Father, Trever Kyle Jester also nominated Alex's sister and her husband (Charles Stanton and Erika Sprabary) as Guardians of his daughter.

Furthermore, Erika and Stanton Sprabary were appointed Guardians of "TAJ" by the Chickasaw Indian Nation tribal court on 9/13/2022.  This was prior to the Tulsa District Court having jurisdiction to determine guardianship matters pursuant to; OK §30-1-113 B. After the service of notice in a proceeding seeking the appointment of a guardian or other order, in subsequent proceedings pertaining to the guardianship of a ward and until termination of the proceeding, the court in which the petition is filed has exclusive jurisdiction to determine: 1. The need for a guardian or other order; and 2. How the estate of the ward shall be managed, expended, or distributed to or for the use of the ward or the dependents of the ward."

The "special" guardianship should have been immediately dissolved on 9/15/2022 after the Tulsa District Court was informed of the Chickasaw Guardianship and that the emergency produced by the defendants was remedied pursuant to ICWA 19.  The Sprabarys appointment was before the relevant parties were served notice and before the first hearing set on 9/15/22 by the Tulsa District Court for the determination on the "special" guardianship.  The Tulsa District Court was also notified of the show cause hearing in the Tribal Court on 9/22/22, yet the Tulsa District court ordered a three-month continuance until

16

12/7/2022.  The Tulsa District Court ignored the Tribals Courts appointment, usurping the
Tribes Jurisidction and prolonging the wrongful removal and retention of an Indian child
pursuant to ICWA 1920.

The Defendants claim of exclusive and continuous jurisdiction immediately following
the death of Alexandria Paul ( "mother of TAJ") citing the first two guardianships (PG-2020-
38 and PG-3030-557) omit the following facts;

1.  The State of Texas had exclusive, continuing jurisdiction and made the initial
custody determination Ordering ALEXANDRA HAYDEN PAUL THE SOLE
CONSERVATOR of T.A.J. on 11/12/2019  (exhibit - Texas Order).

2.  Two months later, on 1/15/2020, the defendants went to Alexandras and the minors
residence and kidnapped the child from her crib while her mother was asleep in the next
room and drove around for hours to avoid Alex or the "cops" from retrieving the child.  Then
filed an emergency petition for Guardianship ex-parte claiming the child resided with them,
among numerous other fabrications and omissions.

3.  The Tulsa District Court appoints Justin Paul and Wendy Walker a guardianship
without validating the instruments such as the UCCJEA, ICWA Affidavits etc. and without
notifying the State of Texas.  The court that originally issued a custody order retains
continuing exclusive jurisdiction over any modifications of that order. UCCJEA, §202.

4.  No notice was given to the State of Texas, The Chickasaw Tribe, The Father, The
Mother or family through the entirety of the cases making the judgement null and void.

17

5.   The lack of notice to Texas and The Tulsa District Court usurping  jurisdiction forced the mother and child to remain in Oklahoma longer than planned.  After multiple continuances, the mother has to move back home to Texas in April of 2020.  After the case was finally dismissed the child moved back home to Texas on 10/30/2020 and resided with the Liebermans until 8 months before Alex's death.  Wendy nor Justin had not seen the child since 2020 when they were permitted to visit the child for a period of 5.5 months (with a written document stating they would not take the child).

6.   The Tulsa District Court also found the allegations by defendants were false and that no emergency existed, deeming the guardianship unwarranted.

7.   The Tulsa District Court found that there were ICWA violations.

8.   The abuse, domestic violence and dog mauling in the defendants home just 3 weeks before they filed the emergency guardianship was completely omitted.

My husband, in his final days, expressed his fervent wish for the court to hear our plea for justice. We implore the court to consider the welfare of our granddaughter and the legacy of love and protection left by her mother. We seek nothing more than to honor our daughter's memory and ensure the safety and well-being of her daughter.

The proceedings conducted by the Tulsa District Court from the granting of the first "Emergency" Guardianship to the current "Emergency" guardianship violates numerous Federal laws as set forth in ICWA, The State of Texas and the State of Oklahoma, usurped

jurisdiction from the state of Texas, Chickasaw Nation and has ignored the UCCJEA (exhibit - UCCJEA 2020 and 2022).

## VISITATION

The ability to access this visitation is provided for in Oklahoma Statues Title 43 (Marriage and Family) ~43-109.4 Grandparents visitation rights and mirror Texas Family Code Section 153.432  in many respects Texas Family Code Section 153.432 gives a biological or adoptive grandparent the ability to request possession or access to a grandchild to grandparents. The most notable US Supreme court case dealing with Grandparents rights, the Supreme Court discussed parents' fundamental rights to raise and rear their own children. However, in the *Troxel* case the US Supreme court refused to strike down a Washington state law granting substantial grandparent visitation. What *Troxel* left us with is varying degrees of grandparent visitation throughout the 50 states. Although many individuals have challenged grandparent visitation laws in their state, most of the time these laws are upheld. In Oklahoma statue ~43-109.4 there is litmus test for Grandparents eligibility, if certain factors exists then the Grandparents should be granted visitation rights. Oklahoma's Supreme Court struck down an earlier version of the Oklahoma Grandparent Visitation Statute as unconstitutional based on *Troxel*. The current amended statute has withstood legal challenges and allows grandparent visitation when 3 factors are present, specifically:

- grandparent visitation serves the child's best interests

- the grandchild's parent(s) are unfit or the grandchild would be harmed if grandparent visitation didn't occur, and

- the grandchild's nuclear family unit has been dissolved by circumstances, including:

  o the grandchild's parents have filed a divorce, annulment or maintenance action and the grandparent's relationship with the grandchild predates the divorce, annulment or maintenance action

  o the grandchild's parents are divorced or separated or have had their marriage annulled

  o the grandchild's parent, who is a child of the grandparent, is deceased, and the grandparent's relationship with the grandchild predates the parent's death

  o a person other than a parent was awarded custody of the grandchild, or the grandchild doesn't reside in either parent's home *

  o one or both of the grandchild's parents has been convicted of a felony and is incarcerated and the grandparent had a relationship with the grandchild that predates the parent's incarceration

  o the grandparent had custody of the child at some point, whether court-ordered or not *

  o the grandchild's parent deserted the other parent for at least 1 year and the grandparent has a strong bond with the grandchild, or

  o the grandchild's parents have never been married, they don't live together, and the grandparent has a strong, continuous relationship with the grandchild. *

All three elements are present in the case of "TAJ" Kathrine Lieberman should receive court-ordered visitation rights.

The first test is does visitation serve the best interest of the child. Kathleen Lieberman has played an important role as Grandmother/educator with a program to promote healthy learning skills, and to help children excel in basic skill. *"See Exhibit 1"*

The second test is would the child be harmed if Grandparent were not granted visitation rights. The answer again is yes. Kathleen Lieberman has been with "TAJ" since she was born, "TAJ" has lived with Kathleen Lieberman at her home for more than a year of her young life. The separation that the defendant has created in the child's life has totally isolated "TAJ" from both maternal and paternal sides of her family. The Defendants have refused to allow the father visitation as ordered by the court. We believe that this isolation, especially after the untimely death of her mother will have lasting and profound mental health issues as a result.

The third test is affirmed because the Plaintiffs has custody of TAJ for a number of month and there was a strong and continuous relationship with "TAJ" since her birth until the defendant began their campaign of filing emergency guardianship.

# SUMMARY

The Plaintiffs played an integrate role in the child's education and upbringing from birth until the child was taken by the defendants.  The defendants refuse to allow any communication whatsoever not only with her grandparents but entire family as well.    The alienation of her Grandparents and family leaves the child wondering why she has been forgotten/abandoned, leaving lifelong emotional scars.  My oldest daughter, Erika Sprabary, whom was a huge part of Alexandra's life stays home solely to care for her 4 kids (and her nieces and nephews when needed).  She begged Justin Paul to bring T.A.J. back after Alex's death to allow her to process her mother's death and get loved on all day by her Grandmas, Grandpas, Aunts (that she previously lived with).  The defendants, who have never have raised a child before told us she was "fine", and that she didn't need to heal, she's having fun, then stuck her in school just 4 days after the awful ordeal of losing her mother.  They admitted to Erika that she was crying every day when Wendy forced her to go.  This was an 8 hour a day preschool that could have been put off for a bit.  The fact is the defendants have no regard for what is best for this child and ***HAVE NO CLAIM TO THE CHILD.***  They have criminally gained possession of this child multiple times.  It is disturbing that someone could be appointed a guardianship based on unvalidated instruments.  Not one single safe guard was utilized in these proceedings.  It should have raised a red flag that the defendants didn't know anything about the child or her family.  The Mother, Father, and both their families as well as the Tribe have the superior right to the child.  Legally, the guardianship granted to Erika and Stanton Sprabary had Superior authority in this case and made them aware of the federal law

ICWA and Oklahoma State law governing the required the transfer of this case to the Tribal Court and the authority of Erika and Stanton Sprabary as Guardians.


There has been no finding whatsoever that the child would be harmed in the care of her family, but there is clear evidence to the contrary.  Evidence herein demonstrates the serious concerns regarding the safety and wellbeing of the minor child in the care of Justin Paul and Wendy Walker.  The defendants were not present in the mother's life 29 of her 30 years of life and have an obvious adverse interest for the repeated attempts to gain guardianship over the child.  It is essential that this court evaluate the legality of the defendants claims to retain possession of the child TAJ and the methodology the defendant's used to obtain guardianship. An intervention in this matter is paramount to safeguarding the rights and well-being of the minor child.  We implore the court to undertake a thorough review of this case, including an examination of the actions of the defendants upon the death of the plaintiff's daughter and the validity of the guardianship proceedings.


This Court has Jurisdiction over federal laws such as the ICWA and diversity of jurisdiction.  Clearly the Tulsa District Court usurped jurisdiction from the State of Texas, Denton County and the Chickasaw Tribe and are in violation of numerous standards set forth by Congress to prevent the breakup of an Indian Family as well as her maternal family.

23

# STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      T.A.J. was born in Dallas, Texas and resided in Texas until 8/7/2019.

2.      On 8/7/2019, Alex Paul opted to finish her last 2 months of the Denton Drug Court program in Oklahoma and T.A.J. was moved from Erika Sprabary home to Justins home temporarily.

3.  The State of Texas had exclusive, continuing jurisdiction and made the initial custody determination Ordering ALEXANDRA HAYDEN PAUL THE SOLE CONSERVATOR of T.A.J. on 11/12/2019.

4.  Two months later, on 1/15/2020, the defendants went to Alexandras and the minor's residence and kidnapped the child from her crib while her mother was asleep in the next room and drove around for hours to avoid Alex or the "cops" from retrieving the child.  Then filed an emergency petition for Guardianship ex-parte claiming the child resided with them, among numerous other fabrications and omissions.

5.  The Tulsa District Court appoints Justin Paul and Wendy Walker a guardianship without validating the instruments such as the UCCJEA, ICWA Affidavits etc. and without notifying the State of Texas.  The court that originally issued a custody order retains continuing exclusive jurisdiction over any modifications of that order. UCCJEA, §202.

6.      The kidnapping, abuse, domestic violence and dog mauling in the defendants home just 3 weeks before they filed the emergency guardianship was not addressed.

7.  No notice was given to the State of Texas, The Chickasaw Tribe, The Father, The Mother or family through the entirety of the cases making the judgement null and void.

24

8.  The lack of notice to Texas and The Tulsa District Court usurping jurisdiction forced the mother and child to remain in Oklahoma longer than planned.  After multiple continuances, the mother came back home to Texas in April of 2020.

9.    When the case PG-2020-38 was dismissed on 8/26/2020, the defendants refused to return the child and filed another "emergency" petition the same day.

10.  The Tulsa District Court dismissed the second case (PG-2020-557) after the courts finding that the allegations by defendants were false and that no emergency existed, deeming the guardianship unwarranted.  The Tulsa District Court found that there were ICWA violations.

11.    After the case was finally dismissed the child moved back home to Texas on 10/30/2020 and resided with the Lieberman's until 8 months before Alex's death.

12.  Wendy nor Justin had not seen the child since 2020 when the child was finally given back to her mother and family.

13.  After the mother forgivingly allowed the defendants to see the child 4 days before 1/1/2022, it was only permitted with if they signed a document stating they would not take the child.

14.    The mother ceased all visitation with the defendants after 6/4/2022.

15.  Trever Kyle Jester, Alexandra Hayden Paul and T.A.J. resided on the Chickasaw "reservation" at the time of Alexandras death.

16.    At aprox 9:05, on 8/12/2022, the defendants were made aware of Alexandras death and choose not to contact anyone, including Alex's mother, father or sister until after 4:09 pm.

17.    Justin Paul, whom did not have a driver's license went to pick up the child.

18.  Wendy Walker did not go to the scene.

25

19.  Justin Paul took all of Alex Pauls personal belongs, including her purse, wallet (with credit cards, cash, food stamp card, etc), birth certificate, T.A.J.'s birth certificate, T.A.J.s Indian card, cell phone, car keys and keys to her duplex.

20.  Justin Paul wrongfully took control of Alexandras body rather than call her next of kin (her mother).   Title 41, chapter 27, **Section 1158 - Right to Control Disposition of Remains - Persons in Whom Vested.**  The right to control the disposition of the remains of a deceased person, the location, manner and conditions of disposition, and arrangements for funeral goods and services vests in the following order, provided the person is eighteen (18) years of age or older and of sound mind:

1. The decedent, provided the decedent has entered into a pre-need funeral services contract or executed a written document that meets the requirements of the State of Oklahoma;

2. A representative appointed by the decedent by means of an executed and witnessed written document meeting the requirements of the State of Oklahoma;

3. The surviving spouse;

4. The sole surviving adult child of the decedent whose whereabouts is reasonably ascertained or if there is more than one adult child of the decedent, the majority of the surviving adult children whose whereabouts are reasonably ascertained;

5. The surviving parent or parents of the decedent, whose whereabouts are reasonably ascertained;

6. The surviving adult brother or sister of the decedent whose whereabouts is reasonably ascertained, or if there is more than one adult sibling of the decedent, the majority of the adult surviving siblings, whose whereabouts are reasonably ascertained;

26

21.  The defendants filed for an emergency guardianship PG-2022-640 on 8/17/2022.

| APPLICATION FOR SPECIAL GUARDIANSHIP |
|---|
| exhibit - PG-2022-640 Application for Special Guardianship (doc 1053261822) |
| 1.  Wendy Walker, whom is of no relation to minor through blood or marriage files petition claiming she is her Aunt but omits Justin Paul. |
| 2.  Omits the Fathers address and family |
| 3.  States they "The child has been neglected and we are the only family shes got right now". |
| 4.  Omits the witnessed document Alex Paul executed on 7/13/2021 nominating her Mother, Sisters or Step-brother to care for her daughter in the event something should happen to her.   Alex also personally informed Wendy Walker of the protections she executed to protect her daughter from them taking her again. |
| 5.  Omits childs grandfather that acts as the mother and childs attorney. |
| 6.  Falsey states she is qualified by Oklahoma Statutes 4-105. |
| 7.  Notes she will be filing for my sisters Social Security Survior benefits. ***Something that was not on Alex's sister, Erikas petition. |
| *****Not requested, or even thought about on Erikas petition.  (Alex real sister) |

10.  Falsely states she is a relative of minor within the fourth degree of consanguinity as reason for the Court to to waive the requirement for filing an annual accounting and annual guardianship plan.

11.  Claims "there is imminent danger that the health and safety of Ward will be seriously impaired unless immediate action is taken."   When asked to further explain; "We are the only family she has."

*****Once again, a false emergency was created.   Concealing the family information is the only way she could claim an "emergency".

*****This is not a misrepressentation, it is a blantant lie.  Wendy was fully aware of the close relationship Alex's had with her family up until the day she died.

*****Wendy knew full well the child lived with her Grandmother just 8 months before Alex died.

12.  Falsely claims she will be severely neglected if she doesnt get the special guardianship immediately.  Omits that she had to lie to law enforcement, ICW, DHS to gain physical possession of the minor then was restraining her at her home.

**UCCJEA -**   exhibit - PG-2022-640 UCCJEA (1053261830)

1.  States child resides with them

2.  Falsely state the child has only lived with her the for the last five years.

> 3. Omits ALL Family and their addresses, claims the child only lived with her

> 4.  Enters the Tulsa cases but fails to disclose the Court found the allegations that invoked the emergency guardianship false and that no emergency existed.  Cited the "Dismissal for application for letters of Temporary General Guardianship" on her additional petition as to make it look like she dismissed the case rather than the Court.

> 5.  Intentionally omits the year and a half long Texas case that made the initial custody determination and had exclusive continuing, jurisdiction.

> 6. Omits key family members that she is fully aware has a significant relationship with the child and a right to custody and visitation.  She does not disclose that her visitation with the child was conditional upon her signing a written document stating the specifics of the visit to ensure she did not steal the child again.

22.PG-2022-40 Appointed Charles Stanton Sprabary and Erika Sprabary Emergency Guardianship of T.A.J. and a hearing was set for 9/15/2022.

23.    On 9/15/2022, the Sprabarys were the appointed Guardians for T.A.J. by the Chickasaw Tribal Court.  The Tulsa District Court was made aware of the guardianship and the hearing scheduled for 9/22/2022 but disregarded it and ordered a continuance until 12/7/2022.

24.    The proceeding on 9/15/2022 was held without the Father having been served.

25.    The proceeding on 9/15/2022 was held without the Tribe having been served 10 days prior.

26. The Tulsa District Court denied the Fathers request to transfer the proceeding to the Chickasaw tribal court.

27. The Mother written declaration for guardians in the event of her death were ignored.

28. The Fathers nomination of guardians for his daughter was denied.

29. The proceeding on 12/7/2022 was held without the Father having representation.

30. The defendants were the only party heard on 12/7/2022. The Sprabary were not allowed to participate in the hearing in the Tulsa District Court on 12/7/2022 despite still being the Tribal Courts appointed Guardians, the mothers will and the fathers request.

31. The defendants changed the court ordered visitation on 12/7/2022 to be in Oklahoma under Justins supervision rather than in Texas under the Sprabarys supervision.

32. The defendants have not allowed any communication at all between the child and her Paternal Grandparents. Aunts Uncle Cousins or Maternal Grandparent, Aunts , Uncles, Cousins.

33. There has been no finding that any harm would or could come to the child to return the child to the Indian Custodians (Erika and Stanton Sprabary).

34. The Liebermans, the Sprabarys, Ms. Barnard and the Jesters have not been heard by the Tulsa District Court, T.A.J.s appointed attorney, the guardian-ad-litem (recently appointed) to this day.

# STATEMENT OF ISSUES TO BE DECIDED

The defendants' actions are currently in violation of the visitation ordered to the father of the child T.A.J. as ordered by the District Court of Tulsa County Oklahoma.  In the plaintiff's pursuit of these ends, we pray the Court Acknowledges the Defendants pattern of intentionally fabricating and omitting crucial facts to gain possession of the plaintiff's grandchild, illumined by a plethora of violations of Federal laws governing the proceeding. The implications of such falsification render the proceeding void from its inception.

We pray that the court in its review of the facts and if the court can knowledge the falsification of certain Federal Document and affidavits provided by the defendant that these actions be referred to the U.S. attorney's office to be reviewed for criminal prosecution. The defendants use of the Tulsa District Courts to affect child stealing in the midst of proper protest.

It is too late for my husband Mark Lieberman he passed away without the peace that Taylynn brought to both our lives.  We beseeched the defendants to allow my husband to simply talk to our granddaughter before he died but were coldly ignored.   I am aware that legal proceedings typically pertain to the living, but I implore you to consider the voice of my daughter and husband, silenced prematurely by fate, in the matter of her daughter's custody.

Now, with their absence weighing heavily upon us, it is more imperative than ever that their voice be heard and our granddaughters' rights be upheld.  The injustice done to my daughter

during her lifetime cannot be allowed to persist beyond her earthly existence. As her surviving

family member, I will never stop advocating

for her for voice to be heard.


Furthermore, I implore the court to prioritize the best interests of our

granddaughter, T.A.J. in this matter.  Reuniting her with her late mother's family, and Paternal

Indian Family who love and cherish her dearly, would undoubtedly serve her emotional and

psychological well-being far better than maintaining the current arrangement.


In light of the aforementioned discrepancies, and the best interest of our grandchild, our

prayer is for the court;


1.  Confirm the proceedings in the Tulsa District Court are void ab inito as fraud vitiates

everything, ( see VAZQUEZ v. DREYFUS COURT: SUPREME COURT OF ARIZONA.

 DATE: JUL 16, 1928)

*JUDGMENT — "JUDGMENT PROCURED BY FRAUD MAY BE VACATED ANY TIME*

*ON PROPER SHOWING BY INJURED PARTY. —* **Fraud vitiates everything** which it touches,

and when **fraud** has been committed by the party in whose favor the judgment was rendered, it

may be vacated at any time upon a proper showing made by the injured party".


2.  WRIT OF HABEAS CORPUS returning child to party with superior rights.  After a

review of the evidence presented, we pray the Honorable Court acknowledge the Declaration of

the deceased mother, Alexandra Paul and the Father (only surviving parent), Trever Kyle Jester

as having the Superior Rights Claim to the Child TAJ and secure a writ of Habeas Corpus for the

rightful return of TAJ to her grandmother Kathleen Lieberman and her sister Erika Sprabary (and

husband Stanton Sprabary) so that a proper proceeding of guardianship can take place in TAJ

home state of Texas.


3. We pray the court awards our family the $80,000 we are seeking in real property

damages.

4. We pray that the court award Attorney and general expenses (travel expenses, lost

work, etc.) we incurred in these proceedings in excess of 250,000.

5. We pray that the court take Judicial Notice in its review of the facts and evidence

presented herein, acknowledging the premeditated criminal behavior in the falsification of vital

documents and affidavits provided by the defendants Wendy Walker and Justin Paul. The shear

gravity of harm done to the child TAJ, Alexandra Hayden Paul (deceased), Mark Lieberman

(deceased), and the entire maternal and Indian family.  The reckless endangerment of child in

their haste to gain physical possession without regard to health and safety of child.  We pray that

these actions be referred to the U.S. District Attorney office, the Tulsa County District and

County attorney's office to be reviewed for criminal prosecution.


Respectfully Submitted,

_____
Kathleen Lieberman      Pro Se petitioner

1704 Pine Hills Lane

Corinth, Texas 76210

(817) 291-7082

Kathleen.Lieberman@Yahoo.com

33

Dated:  04/7/2024

## Certificate of Service

I certify that a true copy of this document was served in accordance with Rule 21a

of the Texas Rules of Civil Procedure on the following on March 27th ,2024


_____

Kathleen Lieberman

Pro-Se

Petitioner