IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KATHLEEN D. LIEBERMAN and<br>MARK J. LIEBERMAN<br><br>Plaintiffs,<br><br>v.<br><br>JUSTIN PAUL and<br>WENDY WALKER,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  No.: 4:23-CV-00887<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, WRIT HABEAS CORPUS, MOTION FOR ATTORNEY FEES, COST, EXPENSE**

Defendants Justin Paul and Wendy Walker file this response to the Petitioner's *Combined* Motions for Summary Judgement, Writ Habeas Corpus, and Motion for Attorney's Fees, Cost, and Expenses (EFC 23). Petitioner's motion for summary judgment is in support of two claims for in the original complaint and the amended complaint, to wit: 1) request for visitation based on the Tulsa County District Court's order of visitation for the *natural father*, and 2) requested reimbursement from the court-appointed guardians for expenses allegedly incurred for renovation to the petitioner's home *before the death of the minor child's natural mother*, the petitioner's daughter. Before addressing the motion for summary judgment, the defendants re-urge their previous motions to dismiss (ECF 12 &13).  The Petitioner's motion for summary judgment argues factual issues that only highlight the number of disputed material facts, not entitling a judgment as a matter of law.

The Defendants understand and sympathize with the petitioner's current posture in the case, given the untimely passing of the previous attorney of record and joint petitioner, Mr. Mark Lieberman, a licensed, well-known, and respected attorney. Understanding the emotional toll of

dealing with his passing as well as the passing of other Lieberman family members, as attorney of record, I remain obligated to pursue the position of my client. I will attempt to do so with the utmost respect to the parties.

## **PRELIMINARY PROCEDURAL ISSUES**

The Defendants request the court to be apprised of two procedural concerns of the Defendants as follows:

1. The *pro se* filing of the petitioner's motion for summary judgment was conducted under the ECF registration of the now-deceased Mr. Mark Lieberman. While Mr. Lieberman was representing both Petitioners pro se, he was, in fact, a licensed and practicing attorney in the district, while the remaining petitioner is not. The Defendants would respectfully request that the remaining petitioner be required to register with the electronic filing system of the Eastern District of Texas to ensure she receives all proper notices and filings. The Defendants likewise request that the remaining petitioner, if she continues to represent herself pro se, be provided guidance and direction regarding her pro se obligations under the court's local and federal rules.

2. The Petitioners continue to publish confidential information in their filings. Throughout the 587 pages of their motion, with attachments/exhibits, the Petitioners have published personal and confidential information to the public, including birthdates, Social Security numbers, vehicle registration numbers, medical histories, pictures of the minor, and personal tribal identification cards. (ECF # 24, 24-3, -4, -5, -6, -7,-8,-9,-10,-11,-12,-15,-16,-17,-18,-19, 25, 25-2,-3,5-4,-12,-15). Including this confidential information in pleadings violates Rule 5.2 of the Federal Rules of Civil Procedure, which is highlighted during each" login" to the ECF site before being able to proceed. The Petitioners have included confidential information in their motion for summary judgment, including confidential information taken directly from the guardianship cases

in Oklahoma and the Chickasaw Nation, specifically GP 2020 – 038, 2020 – 557, and 2022 – 40. (ECF 26, 26-1, -2, -4). This includes the petitioner's filing, *in their totality*, the transcripts of guardianship hearings (ECF 26-8, 27-2), during which the district court specifically admonished the parties not to speak or discuss the matters outside the courtroom and nor provide information to any other parties outside the courtroom regarding the matters it was addressing. While the transcripts are the most informative, accurate, and best chronological presentation of the events for the court, it is highly inappropriate that they were made public records. Their publishing violates Oklahoma Title 30 § 1-122 -the publishing in a public form of confidential information of parties involved in guardianship matters. It is also of concern that the Petitioners have obtained this large volume of information from a closed court proceeding in Oklahoma. Also, within the pleadings, they provide copies of exhibits to include confidential guardianship applications, affidavits, background checks, and other documents required in guardianship cases, all of which are to be held strictly confidential and not released/ published to third parties or the public. According to Oklahoma law, the "fact of the existence of a guardianship . . . shall not be considered confidential information"; however, all other information concerning a guardianship is confidential information which "shall be strictly controlled." Okla.Stat. 30, § 1-122. "Upon appropriate request by a court . . . of another state, the court shall forward a certified copy" of the orders or other pertinent records. Okla.Stat. 43, § 551-112; Tex. Family Code § 152.112.

The Defendants request that the petitioner be admonished to review and adhere to Oklahoma's restrictions outlined in OK Stat. 43, § 551-112; Tex. Family Code § 152.112 and Rule 5.2 of the Federal Rules of Civil Procedure.

### NATURE AND STAGE OF PROCEEDING

On August 13, 2022, T.A.J. (the "Minor Child") was found in her home alone with her deceased mother, Alexandra Paul ("Natural Mother"), whom she had been attempting to awaken

from sleep for two days from an apparent drug overdose.  (Incident Report, attached hereto as Ex. 1.)  T.A.J. used Natural Mother's phone to call Wendy Walker, her aunt ("Ms. Walker"), one of the two Defendants in this action.  After processing the scene, the Sheriff's Office released T.A.J. to Jason Paul ("Mr. Paul"), Ms. Walker's husband, Natural Mother's half-brother, T.A.J.'s uncle, and the other named defendant in this action.  T.A.J.'s putative father, Trever Jester, was incarcerated at the time of the discovery of Alexandra Paul. Defendants filed for and obtained Emergency Guardianship of the minor child pursuant to the Oklahoma statute and the Indian Child Welfare Act.

According to Oklahoma Statutes, the "court may *without notice* appoint a special guardian upon the filing of the petition, upon presentation of evidence of the incapacity of the subject of the proceeding, upon a showing that an immediate or reasonably foreseeable serious physical harm to the subject of the proceeding . . . will result from a delay, and upon presentation of a proposed emergency plan of care for the subject of the proceeding." Okla.Stat.tit. 30, § 3-115 (emphasis added).  The Indian Child Welfare Act ("ICWA") likewise provides for emergency placement:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation but temporarily located off the reservation from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. . . .

25 U.S.C. § 1922.

The minor child has been in a court-ordered guardianship pursuant to the laws of the State of Oklahoma since just days after she was found.  The following motions are currently pending and are re-urged and incorporated:

1. *Defendant's Motion to Dismiss for Lack of Jurisdiction* (ECF 12),
2. *Defendants' Motion to Dismiss 12(b)(6)* (ECF 13),
3. Defendants incorporate *Defendants' Reply to Petitioner's Response to*

4

>   *Motion to Dismiss for Lack of Jurisdiction* (ECF 22*)*,
>
> 4. *Defendants' Reply to Response to Motion to Dismiss for Lack of Jurisdiction* (EFC 21).

These motions directly respond to the petitioner's combined and lengthy Motion for Summary Judgment. While Discovery issues had been discussed with prior counsel, no meaningful Discovery has been conducted currently with the pending motions.

## PETITIONERS' STATEMENT OF UNDISPUTED MATERIAL FACTS

The Defendants will attempt to address the entitled" undisputed material facts" in compliance with the court's *Standing Order Regarding Motions for Summary Judgment and Other Dispositive Motions.* Many numerically identified sentences/paragraphs contain varied subject matters and topics combined. The Defendants will try to delineate whether an item is a" material fact" for the motion for summary judgment. The Undisputed Material Facts are reproduced as they appear in the plaintiff's Motion for Summary Judgement.

1. T.A.J. was born in Dallas, Texas and resided in Texas until 8/7/2019.

*Defendants' response: "DISPUTED" as to date resided in Texas, request competence evidence there be of.*

2. On 8/7/2019, Alex Paul opted to finish her last 2 months of the Denton Drug Court program in Oklahoma and T.A.J. was moved from Erika Sprabary's home to Justin's home temporarily.

*Defendants' response: "DISPUTED" but not material.*

3. The State of Texas had exclusive, continuing jurisdiction and made the initial custody determination Ordering ALEXANDRA HAYDEN PAUL THE SOLE CONSERVATOR of T.A.J. on 11/12/2019.

*Defendants' response: "DISPUTED"*

4. Two months later, on 1/15/2020, the Defendants went to Alexandras and the minor's residence and kidnapped the child from her crib while her mother was asleep in the next room and drove around for hours to avoid Alex or the "cops" from retrieving the child. Then filed an emergency petition for Guardianship ex-parte claiming the child resided with them, among numerous other fabrications and omissions.

*Defendants' response: "DISPUTED" but not material.*

5. The Tulsa District Court appoints Justin Paul and Wendy Walker guardianship without validating the instruments such as the UCCJEA, ICWA Affidavits, etc., and without notifying the State of Texas. The court that originally issued a custody order retains continuing exclusive jurisdiction over any modifications of that order. UCCJEA, §202.

*Defendants' response: "DISPUTED" as to all but the Tulsa District Court appointing Justin Paul and Wendy guardianship or Is Not Supported by Admissible Evidence.*

6. The kidnapping, abuse, domestic violence and dog mauling in the Defendants home just 3 weeks before they filed the emergency guardianship was not addressed.

*Defendants' response: "DISPUTED"*

7. No notice was given to the State of Texas, The Chickasaw Tribe, The Father, The Mother or family through the entirety of the cases making the judgement null and void.

*Defendants' response: "DISPUTED" but not material or supported by admissible evidence.*

8. The lack of notice to Texas and The Tulsa District Court usurping jurisdiction forced the mother and child to remain in Oklahoma longer than planned. After multiple continuances, the mother came back home to Texas in April of 2020.

*Defendants' response: "DISPUTED", but not material or supported by admissible evidence.*

9. When the case PG-2020-38 was dismissed on 8/26/2020, the Defendants refused to return the child and filed another "emergency" petition the same day.

*Defendants' response: "DISPUTED" but not material or supported by admissible evidence.*

10. The Tulsa District Court dismissed the second case (PG-2020-557) after the courts finding that the allegations by Defendants were false and that no emergency existed, deeming the guardianship unwarranted. The Tulsa District Court found that there were ICWA violations.

*Defendants' response: "DISPUTED" but not supported by admissible evidence.*

11. After the case was finally dismissed the child moved back home to Texas on 10/30/2020 and resided with the Lieberman's until 8 months before Alex's death.

*Defendants' response: "DISPUTED", unclear which "case" was finally dismissed", but not material.*

12. Wendy nor Justin had not seen the child since 2020 when the child was finally given back to her mother and family.

*Defendants' response: "DISPUTED" but not material.*

13. After the mother forgivingly allowed the Defendants to see the child 4 days before 1/1/2022, it was only permitted with if they signed a document stating they would not take the child.

*Defendants' response: "DISPUTED" but not material.*

14. The mother ceased all visitation with the Defendants after 6/4/2022.

*Defendants' response: "DISPUTED" but not material.*

15. Trever Kyle Jester, Alexandra Hayden Paul and T.A.J. resided on the Chickasaw "reservation" at the time of Alexandras death.

*Defendants' response: "UNDISPUTED" but not material.*

16. At aprox 9:05, on 8/12/2022, the Defendants were made aware of Alexandras death and choose not to contact anyone, including Alex's mother, father or sister until after 4:09 pm.

17. Justin Paul, whom did not have a driver's license went to pick up the child.

*Defendants' response* -"**DISPUTED but not material,**

18. Wendy Walker did not go to the scene.

*Defendants' response* -**interpreting the "scene" as the residence of where the minor child was located with her deceased mother -"UNDISPUTED but not material,"**

9. Justin Paul took all of Alex Pauls personal belongs, including her purse, wallet (with credit cards, cash, food stamp card, etc), birth certificate, T.A.J.'s birth certificate, T.A.J.s Indian card, cell phone, car keys and keys to her duplex.

*Defendants' response* -"**Disputed but not material,**"

20. Justin Paul wrongfully took control of Alexandras body rather than call her next of kin (her mother). Title 41, chapter 27, Section 1158 - Right to Control Disposition of Remains - Persons in Whom Vested. The right to control the disposition of the remains of a deceased person, the location, manner and conditions of disposition, and arrangements for funeral goods and services vests in the following order, provided the person is eighteen (18) years of age or older and of sound mind:

1. The decedent, provided the decedent has entered into a pre-need funeral services contract or executed a written document that meets the requirements of the State of Oklahoma;

2. A representative appointed by the decedent by means of an executed and witnessed written document meeting the requirements of the State of Oklahoma;

3. The surviving spouse;

4. The sole surviving adult child of the decedent whose whereabouts is reasonably ascertained or if there is more than one adult child of the decedent, the majority of the surviving adult children whose whereabouts are reasonably ascertained;

5. The surviving parent or parents of the decedent, whose whereabouts are reasonably ascertained;

6. The surviving adult brother or sister of the decedent whose whereabouts is reasonably ascertained, or if there is more than one adult sibling of the decedent, the majority of the adult surviving siblings, whose whereabouts are reasonably ascertained;

*Defendants' response* -**"Disputed"**

21. The Defendants filed for an emergency guardianship PG-2022-640 on 8/17/2022

*Defendants' response* -**"Undisputed"**

22. PG-2022-40 Appointed Charles Stanton Sprabary and Erika Sprabary Emergency Guardianship of T.A.J. and a hearing was set for 9/15/2022.

*Defendants' response* -**"Disputed but not material"**.

23. On 9/15/2022, the Sprabarys were the appointed Guardians for T.A.J. by the Chickasaw Tribal Court. The Tulsa District Court was made aware of the guardianship and the hearing scheduled for 9/22/2022 but disregarded it and ordered a continuance until 12/7/2022.

*Defendants' response* -**"Disputed but not material,"**

24. The proceeding on 9/15/2022 was held without the Father having been served.

*Defendants' response* -**"Disputed but not material,"**

25. The proceeding on 9/15/2022 was held without the Tribe having been served 10 days prior.

*Defendants' response* -**"Disputed but not material,"**

26. The Tulsa District Court denied the Fathers request to transfer the proceeding to the Chickasaw tribal court.

9

*Defendants' response -*"UnDisputed"

27. The Mother written declaration for guardians in the event of her death were ignored.

*Defendants' response -*"Disputed, but not material,"

28. The Fathers nomination of guardians for his daughter was denied.

*Defendants' response -*"Undisputed, but not material

29. The proceeding on 12/7/2022 was held without the Father having representation.

*Defendants' response -*"Disputed, father was" pro se",  but not material,"

30. The Defendants were the only party heard on 12/7/2022. The Sprabary were not allowed to participate in the hearing in the Tulsa District Court on 12/7/2022 despite still being the Tribal Courts appointed Guardians, the mothers will and the fathers request.

*Defendants' response -*"Disputed but not material," *or* supported by admissible evidence*.*

31. The Defendants changed the court ordered visitation on 12/7/2022 to be in Oklahoma under Justins supervision rather than in Texas under the Sprabarys supervision.

*Defendants' response -*"Disputed but not material,"

32. The Defendants have not allowed any communication at all between the child and her Paternal Grandparents. Aunts Uncle Cousins or Maternal Grandparent, Aunts , Uncles, Cousins.

*Defendants' response -*"Disputed but not material,"

33. There has been no finding that any harm would or could come to the child to return the child to the Indian Custodians (Erika and Stanton Sprabary).

*Defendants' response -*"Disputed but not material,"

34. The Liebermans, the Sprabarys, Ms. Barnard and the Jesters have not been heard by the Tulsa District Court, T.A.J.s appointed attorney, the guardian-ad-litem (recently appointed) to this day.

*Defendants' response -*"Disputed but not material,"

## SUMMARY OF ARGUMENT

The Petitioners request relief in their Motion for Summary Judgment not identified in the two Claims for Relief in the Amended Petition. (ECF #3, XVII- claim for nominal damages in the amount of $78,000 and damages, XIII- injunctive relief for enforcing grandparental rights). The Defendants will only briefly address the other ancillary request for relief in the motion for summary judgment. The Defendants provide their response to the motion for summary judgment and the ancillary arguments while preserving and not waiving their right to be heard on their previously filed motions to dismiss nor through submission of this response subjecting themselves to the jurisdiction of the court pursuant to the arguments provided in their motions to dismiss.

1. The Petitioners have failed to provide information that establishes this court has jurisdiction to address these matters at the federal level. Petitioners request that this court" void " the proceedings in Tulsa County District Court (Motion for Summary Judgment ECF 23 at page 32) that addressed the guardianship of the minor child. Absent any statutory authority or case law, the petitioner encourages this court to act as an Oklahoma Court of Civil Appeals to make an ancillary challenge to the Tulsa County District Court's findings and rulings.

2. Petitioners have failed to present information or evidence that, in their current position, they have *standing* to raise any of the issues presented in the Motion for Summary Judgment or Writ of Habeas Corpus. The petitioner's motion for summary judgment (ECF 23) on page 31 under "Statement of Issues to be Decided" states that "the defendant's actions are currently in violation of the ***visitation ordered to the father of the child*** T.A.J, by the District Court of Tulsa, Oklahoma." Clearly, the Petitioners are attempting to exercise or enforce the ***father's rights***

11

and, as such, do not have *standing* as the moving party to bring the current action, nor are they entitled to any requested relief.

3. Additionally, the Petitioners have failed to meet the financial jurisdictional amount requirement for diversity. The petitioner's request for damages in the approximate amount of $75-$80,000 was for expenses that were incurred *before the death of the minor's mother*.  The original or amended petition, nor any of the numerous documents supplied in support of the motion for summary judgment, identify or allege any monies spent or damages incurred after the death of the minor's biological mother or because of the guardianship.

4. Petitioner's motion for summary judgment fails to conform to Federal Rule of Civil Procedure 56. FRCP 56 provides that the court may grant a motion for summary judgment if the moving party shows no genuine dispute regarding material facts supporting the charged claim's elements.  Absent disputes regarding material facts, the Petitioners would be entitled to judgment as a matter of law.  While the petitioners have attached volumes of documents, they have failed to identify or list any elements of a federal code under which they bring this action.  Absent identifying the action, the Petitioners thus failed to directly cite any documentation supporting their position that sufficient material facts are undisputed as to the elements to meet their summary judgment burden.

In addition to clearly identifying supportive documents, Petitioners must prove the documents' admissibility. The admissibility burden may be met by providing supporting declarations or affidavits based on the declarant's or petitioners' personal knowledge.  It is appropriate that cited materials may include depositions, stipulations, affidavits or declarations, admissions, interrogatory responses, and other documents and materials pursuant to FRCP 56(c)(4): Which states:

> "*Affidavits or Declarations.* An affidavit or declaration used to support or oppose motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The documentation provided by the petitioners fails to meet this standard even minimally and, therefore, does not support their motion.

## PETITIONER'S LACK OF STANDING AS TO TRIBAL MATTERS

The petitioner's argument wholly bypasses and fails to provide any evidence, information, or caselaw authority that would vest them with constitutional or statutory *standing as a grandparent*, visitation supervisor, or third-party non-custodial persons to raise any of the issues they bring before the court, past or present.   Similarly, the Petitioners have not provided any evidence or statutory authority allowing them "standing" to speak on behalf of the Tribes concerning issues addressed in the Tulsa County or Tribal guardianship cases.   Nor have they provided information allowing them to take the place of the natural father to establish standing. Only the tribe or the natural father would be vested with standing to challenge any issue addressed in the Tulsa County or Tribal guardianship cases.

The Defendants would refer the court to the transcript of the hearing on Petition for Guardianship conducted before Hon. Kurt Glasco on December 7, 2022, in PG 2022 – 640 (Petitioner's exhibit 26-8).  The transcript directly rebuts numerous issues presented by the Petitioners, including those beyond the initial "Request for Relief" identified in the Amended Petition (ECF 3). This is especially true regarding jurisdiction, the extent of participation by the parties at that hearing, the coordination of other tribal courts with the Tulsa County district court,

information provided by the parties' attorneys, and the rulings reached by the Tulsa County District Judge.

## THE PETITIONER FAILS TO MEET THE MONETARY THRESHOLD FOR FEDERAL JURISDICTION UNDER 28 U.S.C. 1332(a)

The Petitioners have provided no evidence that the monetary amount supposedly expended by them in rehab to their residence was in response to a court-ordered or authorized visitation or custody issue concerning the minor child. There is no evidence that the parties entered any kind of contractual relationship that would impose a duty on the Defendants to be liable for any monetary expenditures performed *voluntarily* by the Petitioners *before the natural mother's death,* which occurred on August 13, 2022. Petitioners fail to provide any legal basis, theory, or statutory authority that would entitle them to any monetary damages after the death of the minor's mother, which is also required for diversity for this Court's federal jurisdiction under 28 U.S.C.§ 1332(a).

While the petitioner requests the court award them $80,000 in real property "damages" and unsupported expenses, those are not proper issues to address in a motion for summary judgment at the stage this case is postured and should be left to be addressed on the appropriate application to the Tulsa County District Court.

## CONCLUSION

The Defendants would re-urge their pending motions to dismiss and request the court to grant them. The Defendants request the court determine that the Petitioners do not have standing to bring the complaint. Additionally, the Petitioners have not met the jurisdictional diversity requirements to vest this court with jurisdiction.

In the alternative, sufficient disputes remain regarding material facts, which require the case to proceed to a decision on the merits if the court determines it has jurisdiction. The Petitioners have not pleaded nor have standing or an appropriate basis, in form or substance, to

present a Writ of Habeas Corpus to this court. The Defendants request the court deny the Writ and all requested relief in the motion for summary judgment, dismiss the same, and award attorney's fees, costs, and expenses to Defendants.

>Respectfully submitted,
>
>/s/ David C. Youll
>David C. Youll, OBA No. 16553
>Welsh & McGough, PLLC
>Midway Building
>2727 E. 21st St., Ste. 600
>Tulsa, Oklahoma 74114
>Telephone: 918.585.8600
>Telefax: 918.794.4411
>david@tulsafirm.com
>Attorney for Defendants
>Justin Paul and Wendy Walker

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the above and the foregoing motion was filed via the Court's CM/ECF system, which caused an electronic copy of the same to be served on the following counsel of record:

>Mark Lieberman
>1704 Pine Hills Lane
>Corinth, Texas 76210
>Mjc358@hotmail.com

>/s/ David C. Youll
>David C. Youll